UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KERRY WINN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>AMERITITLE, INC, an Oregon corporation,<br><br>　　　　　　Defendant. | Case No. 1:10-CV-016-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Kerry Winn's Motion to Alter or Amend Judgment (Dkt. 39). For the reasons expressed below, the Court will deny Winn's motion.

## ANALYSIS

After entering judgment in favor of Defendant Amerititle, Inc., the Court awarded Amerititle attorney fees pursuant to Idaho Code § 12-120(3) in the amount of $51,352.50. Winn contends that the Court erred by ruling that (1) Winn consistently took the position throughout the lawsuit that an escrow agreement existed between himself and Amerititle; and (2) apportionment of fees was not necessary because a commercial transaction constituted the gravamen of all three claims asserted by Winn. Winn maintains that this

case did not involve the exchange of goods, services, or property between the parties in an alleged commercial transaction but instead involved a claim that Amerititle breached an assumed a duty to Winn to distribute the escrow funds to Tamarack North, Inc. and Yoriko Fuhriman jointly.

1.      **Legal Standard**

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress.  If it is clear the Court has committed an error, "[t]he only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous.  There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must be balanced with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988).  Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice.  *McDowell v. Calederon*, 197 F.3d 1253, 1255 (9th Cir.1999) (citation omitted).  If the motion to reconsider does not fall within one of these three categories, it must be denied.

**2. The Court Correctly Awarded Attorney Fees to Amerititle Pursuant to Idaho Code § 12-120(3).**

With respect to Winn's first point of error, the Court correctly found that Winn alleged throughout this litigation that an escrow agreement existed between himself and Amerititle. In his Complaint, Winn alleged that "[b]y paying and delivering the Escrow Deposit solely to TNI without the consent of Plaintiff or his predecessors-in-interest to the PSA, Defendant breached the terms and conditions governing its disposition of the Escrow Deposit, for which breach Defendant is liable under Idaho law." *Compl.* ¶ 1. By referring to "terms and conditions," Winn implies that he believed an agreement relating to the distribution of escrow funds existed between himself and Amerititle. Indeed, as Winn points out, he argued that Amerititle "breached its contractual duties" it owed to Winn. *Pl.'s Opp.* at 3-4, Dkt. 20.

In addition, at other points in this litigation, Winn referenced his "agreement" with Amerititle. For example, Winn argued:

- Winn's claim against AmeriTitle sounds in both contract and tort. *Pl.'s Summ. J. Br.* at 3, Dkt. 11-2.

- Amerititle treated Winn, and Winn at all times acted, *as a party to the Escrow*, with AmeriTitle. *Id.* at 6. (emphasis added).

- Winn has been assigned all of Monson's and McDonald PC's rights under the PSA and the Escrow....Thus, Winn now stands in the shoes of Monson, who, as discussed above, AmeriTitle admits was one of the parties to the Escrow. *Id.* at 7.

- The specific term or condition breached by AmeriTitle was its payment of the Escrow Deposit solely to Tamarack North Inc., rather than jointly to it and Yoriko Fuhriman, as specified in...which collectively memorialize and *set forth the agreement made between Winn and AmeriTitle with respect to AmeriTitle's*

> *payment of Winn's Escrow Deposit.*" *Walters Aff.* at Ex. S, Dkt.

- However, *the contract out of which Winn's claim against Amerititle arises* is not the PSA, but rather the agreement established to facilitate the closing of the PSA (the "Escrow). *Pl.'s Opp'n Br.* at 7, Dkt. 20 (emphasis added).

Based on such statements made by Winn, the Court properly found that Winn alleged the existence an agreement relating to the deposit of the escrow funds between him and Amerititle throughout this lawsuit; the Court never found that Winn alleged the existence of a formal, written escrow agreement. A unilateral contract is still a contract even if it only binds one party. *C.f., Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 688 P.2d 1191, 1196 (Idaho App. 1984) (citing Corbin, CORBIN ON CONTRACTS § 21 at 52 (1963) and J. Calmari and J. Perillo, THE LAW OF CONTRACTS § 1-10 (1977)).

More importantly, even assuming that the Court erred in finding that Winn consistently alleged the existence of a formal escrow agreement between Winn and Amerititle, this does not impact the Court's decision to award attorney fees to Amerititle. "Idaho Code section 12-120(3) compels an award of attorney fees to the prevailing party in an action to recover on a commercial transaction." *Troupis v. Summer*, 218 P. 3d 1138 (Idaho 2009). The test to determine whether Idaho Code § 12-120(3) applies is whether the commercial transaction comprises the gravamen of the lawsuit; it must be integral to the claim and constitute the basis upon which the party is attempting to recover. *Johannsen v. Utterbeck*, 146 Idaho 423, 432, 196 P.3d 341, 350 (2008). The term "commercial transaction" is defined in § 12-120(3) as "all transactions except transactions for personal or household purposes." I.C. § 12-120(3).

The Idaho Supreme Court has held that Idaho Code § 12-120(3) "neither prohibits a fee award for a commercial transaction that involves tortious conduct ... nor does it require that there be a contract." *Blimka v. My Web Wholesaler, LLC*, 152 P.3d 594 (Idaho 2007), citing *Lettunich v. Key Bank Nat'l Ass'n*, 109 P.3d 1104, 1111 (Idaho 2005). Moreover, "if a party asserts a claim that is based upon the existence of an alleged commercial transaction, attorney fees are awardable to a prevailing party who defends against such claim even if the alleged commercial transaction is found not to have existed." *Miller v. St. Alphonsus Regional Medical Center, Inc.*, 87 P. 3d 934, 948 (Idaho 2004). However, the commercial transaction under Idaho Code § 12-120(3) must be between the parties. *BECO Construction Company, Inc. v. J-U-B Engineers, Inc.*, 184 P.3d 844, 851 (Idaho 2008).

Winn's claims arose from an alleged commercial transaction. As argued by Winn, Amerititle impliedly agreed to distribute the escrow funds provided by Winn to TNI and Yoriko Furhiman jointly rather than TNI solely. In addition, Winn argued, and the Court found, that Winn was assigned the buyers' rights under the formal, written escrow agreement. Winn sued Amerititle for breach of the escrow agreement between him and Amerititle, breach of fiduciary duties as an escrow agent, and negligence. *Pl.'s Opp.* at 3-4, Dkt. 20. His claims focus on Amerititle's purported failures in providing professional, escrow services related to an underlying real estate transaction. Amerititle's provision of escrow services was not for personal or household purposes because the buyers intended to re-sell or develop the property. *Taylor v. Just*, 59 P.3d 308, 313

(Idaho 2002) ("Both Taylor and the Trustee agree that Taylor's action against the Trustee was to recover in a commercial transaction. Taylor bid at the foreclosure sale in order to obtain the real property for resale."). Thus, the context of Winn's claims was commercial in nature.

Moreover, Winn and Amerititle dealt with each other directly. *Miller*, 87 P.3d at 948 (noting that a transaction cannot exist under the statute unless the parties dealt with each other directly). Winn called Amerititle's escrow agent directly and asked her to provide him with wire transfer instructions for paying the escrow funds and Amerititle provided Winn with written instructions to mark his wired funds as being paid to TNI and Yoriko Fuhriman; Winn then wired the funds to Amerititle directly. It was precisely this direct interaction that Winn alleged created the unilateral contract between him and Amerititle. Simply because someone other than Winn presumably paid Amerititle's fee for its escrow services does not change the fact that Winn alleged that Amerititle agreed to provide an escrow service to him directly for a commercial purpose.

Winn, however, argues that the gravamen of his claims arose out his allegation that Amerititle "breached an assumed duty," and the breach of unilateral contract was simply an alternative theory of recovery. Therefore, according to Winn, the Court erred by failing to apportion fees between the breach of contract claim and the negligence and breach of fiduciary duty claims. The Court disagrees. As the Court previously noted, each of Winn's claims arose from Amerititle's purported failures related to the same commercial transaction, i.e., the provision of escrow services. For this reason,

apportionment was not and is not necessary because a commercial transaction comprised the gravamen of each of Winn's claims.

## ORDER

**IT IS ORDERED that** Plaintiff Kerry Winn's Motion to Alter or Amend Judgment (Dkt. 39) is DENIED.

DATED: **March 10, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge